IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No. 1:17-cv-1154-NCT-JLW

| | |
|---|---|
| P&L DEVELOPMENT LLC, | |
| Plaintiff and Counterclaim Defendant, | **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S CLAIM FOR UNFAIR AND DECEPTIVE TRADE PRACTICES (SIXTH CAUSE OF ACTION)** |
| v. | |
| BIONPHARMA INC. and BIONPHARMA HEALTHCARE LLC, | |
| Defendants and Counterclaim Plaintiffs. | |

Pursuant to Local Rules 7.1, 7.2, and 7.3, defendants Bionpharma Inc. and Bionpharma Healthcare LLC (together, "Bionpharma") submit this brief in support of their motion for judgment on the pleadings as to the claim by plaintiff P&L Development LLC ("PLD") for unfair or deceptive trade practices (Sixth Cause of Action).

## NATURE OF THE MATTER

This is a contract dispute between businesses in New York (PLD) and New Jersey (Bionpharma). PLD agreed to buy four different types of pharmaceutical products from Bionpharma. PLD would then sell the products to distributors and retailers, like Walgreens and CVS, which would re-sell the drugs under a private label nationwide. PLD alleges that Bionpharma breached the contracts when it rejected certain of PLD's orders.

As is typical in North Carolina business litigation, PLD tacked on an alleged violation of N.C. Gen. Stat. § 75-1.1, which declares unfair or deceptive trade practices unlawful. PLD's claim charges Bionpharma with having made misstatements to PLD about the availability of the active ingredients in two drugs that PLD ordered.

When it tacked on this claim, however, PLD disregarded the two choice-of-law rules that North Carolina courts have applied to this type of claim.

One rule, called <u>lex loci</u>, calls for application of the law of the place of the injury. Under this rule, PLD suffered its injury either (1) where it experienced economic loss or (2) where it detrimentally relied on the alleged misrepresentations. North Carolina is not the answer to either inquiry. Based on the complaint's allegations, PLD suffered its alleged damages—lost sales to customers nationally—only in New York. Further, the complaint does not allege that Bionpharma made any misrepresentations in North Carolina or that PLD relied on any misrepresentation in North Carolina.

The second rule, known as the most significant relationship test, examines which state has the most significant relationship to the occurrences on which the claim is premised. Here, North Carolina has, at best, a tenuous connection to the salient allegations: Bionpharma buys the pharmaceutical products from a third-party supplier in High Point.

The prospect of treble damages gives PLD every incentive to press a section 75-1.1 claim, but that enticement cannot countermand the controlling choice-of-law rules. Under those rules, PLD's claim for unfair or deceptive trade practices is governed by

2

New York law or New Jersey law. The laws of New York and New Jersey, however, do not recognize a claim for unfair or deceptive trade practices by a reseller like PLD.

The claim therefore fails at the threshold.

## RELEVANT ALLEGATIONS[1]

PLD is a Delaware limited liability company with expertise in the marketing, distribution, and sale of store-brand and private-label pharmaceuticals. Compl. ¶ 5. PLD buys the drugs from a supplier, repackages them in its retail customers' trade dress and labeling, and sells them to retailers and distributors as private-label products. Id. Its principal place of business is Westbury, New York. Id. ¶ 1.

This case involves PLD's contracts to buy various drugs in softgel form from Bionpharma, a Delaware corporation with its principal place of business in Princeton, New Jersey.[2] Id. ¶¶ 2–3, 5. PLD's customers for these drugs include CVS, Walmart, Costco, Target, and other national retailers and distributors. Id. ¶ 5.

One contract concerns Ibuprofen softgels, PLD's "flagship product." Id. ¶ 17. Beginning in May 2017, Bionpharma began to reject or reduce certain of PLD's Ibuprofen purchase orders. Id. ¶ 18. According to the complaint, Bionpharma said that it could not fulfill the orders because of a marketplace shortage of Ibuprofen's active

---

[1] Bionpharma vigorously disputes the allegations in PLD's complaint, but it acknowledges that the Court accepts the complaint's allegations as true for purposes of this Rule 12(c) motion. E.g., W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co., 814 F.3d 171, 175–76 (4th Cir. 2016).

[2] An original party to the contracts, Banner Pharmaceuticals, had offices in North Carolina. Compl. ¶ 7. Banner sold its generic pharmaceutical product business to Bionpharma. Id. ¶ 9. PLD's allegations do not concern Banner's conduct.

ingredient. Id. ¶ 20. PLD says that there was no marketplace shortage and that Bionpharma intentionally did not fulfill the orders. Id. ¶ 21. PLD further alleges that it has lost substantial sales to major national retailers. Id. ¶ 27.

PLD claims that Bionpharma did not fulfill PLD's orders for three other softgels: Naproxen Sodium, Cetirizine HCL, and Loperamide HCL. See id. ¶¶ 35–38, 48–50, 59–61. PLD alleges that Bionpharma made similar misrepresentations about a marketplace shortage of the active ingredient in Naproxen Sodium. Id. ¶¶ 74–75. According to PLD, there has not been any shortage of the active ingredients in Ibuprofen or Naproxen Sodium to justify Bionpharma's rejections. Id. ¶ 76. PLD has not alleged that Bionpharma made any misrepresentations regarding Cetirizine HCL or Loperamide HCL.

On these allegations, the complaint asserts four claims against Bionpharma for breach of contract—one claim for each contract. See id. ¶¶ 90–122.

PLD has also asserted a claim for the alleged violation of N.C. Gen. Stat. § 75-1.1. See id. ¶¶ 123–39. This claim centers on Bionpharma's alleged misrepresentations to PLD about marketplace shortages of the active ingredients in Ibuprofen and Naproxen Sodium. See id. ¶ 126. For damages, PLD points to lost sales to its national customers. See id. ¶¶ 128–29, 133. PLD alleges that Bionpharma is positioning itself to take those customers from PLD. Id. ¶ 129, 133.

## QUESTIONS PRESENTED

1. Based on the controlling choice-of-law rules, does North Carolina law apply to PLD's claim for unfair or deceptive trade practices?

2. If not, should the Court enter judgment on the pleadings in Bionpharma's favor as to that claim?

## STANDARD OF REVIEW

A Rule 12(b)(6) motion challenges a claim's legal sufficiency. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). To be sufficient, a claim must contain enough factual allegations to be "plausible on its face." M-Tek Kiosk, Inc. v. Clayton, No. 1:15CV886, 2016 WL 2997505, at *11 (M.D.N.C. May 23, 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (Tilley, J.). The Court accepts well-pleaded allegations as true, Woods v. City of Greensboro, 855 F.3d 639, 642 (4th Cir. 2017), but a claim cannot rest on bare legal conclusions. Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011).

## ARGUMENT

**Under the controlling choice-of-law rules, North Carolina law does not govern PLD's claim for unfair or deceptive trade practices.**

Section 75-1.1 claims are ubiquitous in North Carolina business litigation, but the statute does not apply to every business dispute that touches North Carolina. Instead, North Carolina's choice-of-law rules determine when section 75-1.1 applies to a claim for unfair or deceptive trade practices.

These rules call for the application of New York law or New Jersey law, not North Carolina law. Because neither New York law nor New Jersey law permits a claim for

5

unfair or deceptive trade practices by a reseller like PLD, the claim fails as a matter of law, and judgment on the claim should be entered in Bionpharma's favor.

### A. North Carolina courts have applied two choice-of-law rules to claims for unfair or deceptive trade practices.

North Carolina's choice-of-law rules control this diversity action. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

The Supreme Court of North Carolina has not announced which choice-of-law rule applies to claims for unfair or deceptive trade practices, but North Carolina courts have applied one of two rules to these claims: (1) the lex loci test, and (2) the most significant relationship test.[3] SmithKline Beecham Corp. v. Abbott Labs., No. 1:15CV360, 2017 WL 1051123, at *6–7 (M.D.N.C. Mar. 20, 2017).

In this case, the Court need not divine which test the Supreme Court of North Carolina might prefer. Both tests point to New York or New Jersey law—and not North Carolina law—as controlling.

### B. Lex loci calls for the application of New York or New Jersey law.

#### 1. Under lex loci, the state where the injury occurred is considered the situs of the claim.

Lex loci is North Carolina's choice-of-law rule for tort claims. See, e.g., Boudreau v. Baughman, 368 S.E.2d 849, 854 (N.C. 1988). Under this doctrine, the law

---

[3] A contractual choice-of-law provision "does not provide the applicable law for a claim based on unfair and deceptive acts." United Dominion Indus., Inc. v. Overhead Door Corp., 762 F. Supp. 126, 128 (W.D.N.C. 1991). This is because "the nature of the liability allegedly to be imposed by the statute is ex delicto, not ex contractu." ITCO Corp. v. Michelin Tire Corp., 722 F. 42, 49 n.11 (4th Cir. 1983).

6

of the place of the wrong controls the claim. Rhône-Poulenc Agro S.A. v. Monsanto Co., 73 F. Supp. 2d 554, 555 (M.D.N.C. 1999) (Tilley, J.). The place of the wrong, in turn, is the state where the last act giving rise to the injury occurred. SmithKline Beecham (GSK), 2017 WL 1051123, at *8; M-Tek Kiosk, 2016 WL 2997505, at *12.

A plaintiff does not always sustain its injury at its principal place of business. Harco Nat'l Ins. Co. v. Grant Thornton LLP, 698 S.E.2d 719, 725–26 (N.C. Ct. App. 2010). The application of lex loci instead depends on the nature of the claim. For tort claims that arise from a misrepresentation—like a claim for fraud or negligent misrepresentation—the plaintiff's detrimental reliance on the alleged misrepresentation is the last act necessary to give rise to the claim. M-Tek Kiosk, 2016 WL 2997505, at *12; see also Associated Packaging, Inc. v. Jackson Paper Mfg. Co., No. 10 CVS 745, 2012 WL 707038, at *6 (N.C. Bus. Ct. Mar. 1, 2012). This is because the detrimental reliance causes the injury. M-Tek Kiosk, 2016 WL 2997505, at *12.

This Court's decision in M-Tek reflects these principles. There, an Oregon company accused the defendants of making misrepresentations to induce the company to continue doing business with defendants. Id. at *2. The company raised claims for fraud, negligent misrepresentation, and violation of section 75-1.1. Id. at *3. The defendant moved to dismiss these claims, arguing that North Carolina law did not apply. Granting the motion, this Court applied lex loci to determine which state's law governed the claims. Id. at *12–13. Because, unlike here, the complaint suggested that the

7

plaintiff was in Oregon when it relied on the alleged misrepresentations, Oregon law governed the claims, and the Court dismissed them. Id. at *12–13, 19.

For claims that allege unfair or deceptive trade practices, some North Carolina courts applying lex loci have described the last act necessary to cause injury as the suffering of damages. See, e.g., GSK, 2017 WL 1051123, at *8. The GSK decision is instructive. That case, like this case, arose from a contract dispute between two businesses in the pharmaceutical industry. See id. at *1–3. For its injury, GSK alleged that it suffered lost market share and lost profits across the country. Id. at *3. The parties debated whether GSK felt this injury at its principal place of business (Pennsylvania) or at the headquarters of the relevant business unit (North Carolina). Id. at *8–9. Because the complaint contained significant factual allegations that the business unit in North Carolina bore the brunt of the economic impact, the complaint plausibly alleged that North Carolina law applied to the claim for unfair trade practices.[4] Id. at *9.

### 2. PLD's injury arose in New York or New Jersey, not North Carolina.

As the M-Tek and GSK cases show, lex loci offers two analytical routes to determine where PLD suffered its alleged injury. Neither route leads to North Carolina.

First, because the claim concerns an alleged misrepresentation, PLD suffered its injury in the state in which it detrimentally relied on the representation. See M-Tek

---

[4] The relevant contract in GSK had a contractual choice-of-law clause that called for New York law to govern the contract. Id. at *11. Judge Osteen declined to apply the provision because the unfair or deceptive trade practices claim did not rely on the validity or enforceability of any contractual provision. Id.; see also supra p. 6 n.3.

8

Kiosk, 2016 WL 2997505, at *12–13, 16, 19; see also Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 220, 227 (N.C. 2013) (holding that a section 75-1.1 claim based on a misrepresentation must show actual and reasonable reliance). Here, the complaint does not allege that anyone from PLD detrimentally relied on any alleged misrepresentation from Bionpharma in North Carolina. By implication, the complaint suggests New York (PLD's principal place of business) or New Jersey (Bionpharma's principal place of business) as the only conceivable places where any reliance might have occurred, if it occurred at all.[5] New York law or New Jersey law therefore controls the claim for unfair trade practices.

Even if the law were to divorce the suffering of damages from the detrimental reliance that triggered those damages, the result would be the same. The complaint emphasizes that PLD has suffered alleged damages in the form of lost sales to customers across the country. See, e.g., Compl. ¶¶ 5, 25, 27, 42–43, 85, 128–29, 133. These allegations mimic the allegations in GSK, where the plaintiff claimed lost market share and lost profits nationwide. See, e.g., GSK, 2017 WL 1051123, at *3, 9. Judge Osteen applied lex loci in GSK to discern where the plaintiff suffered its economic harm. Because the complaint in GSK contained detailed factual allegations that the plaintiff's

---

[5] The complaint contains only one reference to anyone from PLD being in North Carolina. It states that, on December 1, 2017, PLD visited the facility of Bionpharma's third-party supplier in High Point. See Compl. ¶ 75. This visit came many months after the alleged misrepresentations. See id. ¶18–20. During that visit, moreover, PLD says that it observed "ample quantities" of the active ingredients of Ibuprofen and Naproxen Sodium. Id. ¶ 75. That observation would defeat any allegation of detrimental reliance on any statement about a shortage of those active ingredients.

9

relevant business unit in North Carolina suffered that economic harm, the GSK court concluded that the complaint plausibly pleaded that North Carolina law controlled the plaintiff's claim for unfair or deceptive trade practices.

Contrary to the complaint in GSK, PLD's complaint lacks any similar factual allegations. Indeed, it contains no allegations at all that PLD felt any economic harm in North Carolina from nationwide lost sales. This is unsurprising, given that PLD does not have any relevant office, operations, or business unit in North Carolina, and that PLD's principal place of business is in New York. Compl. ¶ 1. The complaint therefore tabs New York as the only plausible place that it has suffered its alleged damages, making New York the governing law of PLD's claim for unfair or deceptive trade practices.

As these points show, the complaint provides no basis for section 75-1.1 to apply to the Sixth Cause of Action. PLD has not alleged that it detrimentally relied in North Carolina on any representation by Bionpharma. PLD also has not alleged that it suffered any economic harm in North Carolina from its lost sales nationwide. The complaint's allegations leave the laws of New York and New Jersey as the only conceivable laws that might apply to the claim for unfair or deceptive trade practices.

**C. The most significant relationship test likewise calls for the application of New York or New Jersey law.**

PLD's claim for unfair or deceptive trade practices fares no better under the most significant relationship test, the second choice-of-law test North Carolina courts have applied to this type of claim. See GSK, 2017 WL 1051123, at *6–7.

The most significant relationship test asks which state has the most significant relationship to the occurrence that gives rise to the claim. Andrew Jackson Sales v. Bi-Lo stores, Inc., 314 S.E.2d 797, 799 (N.C. Ct. App. 1984); RoundPoint Mortg. Co. v. Florez, No. 13 CVS 8803, 2016 WL 687629, at *23 (N.C. Bus. Ct. Feb. 18, 2016). Although this test inherently turns on case-specific allegations, some courts that have applied the test have looked to the factors in the Restatement (Second) of Conflict of Laws. See GSK, 2017 WL 1051123, at *9; Guzman v. Diamond Candles, LLC, No. 1:15cv422, 2016 WL 5679451, at *3 (M.D.N.C. Sept. 30, 2016). These factors include (a) the place of the injury, (b) the place where the conduct that caused the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the parties' relationship is centered. Id.

Here, these factors point to New York and New Jersey.

The place of the injury. The first factor is the lex loci test. GSK, 2017 WL 1051123, at *10. As discussed above, the complaint is bereft of any allegations to suggest that PLD detrimentally relied on any misrepresentations in North Carolina or that PLD suffered its alleged damages—lost sales across the country—in North Carolina.

The place of the relevant conduct. The second Restatement factor points to New York or New Jersey. The claim hinges on Bionpharma's alleged misstatements about a marketplace shortage of the active ingredients in Ibuprofen and Naproxen Sodium, as well as PLD's detrimental reliance on those alleged representations. PLD does not contend that this conduct, if it occurred at all, occurred in North Carolina.

The complaint's sparse allegations on geography leave only New York and New Jersey, the parties' principal places of business, as the locations of the salient conduct.

The parties' places of business and incorporation. The third factor again points to New York and New Jersey, the parties' principal places of business and residence. Compl. ¶¶ 1–2. Both parties are also Delaware corporations. Id. ¶¶ 1–2.

The place of the parties' relationship. On the fourth factor, the complaint offers no allegations to suggest that the parties centered their relationship anywhere but New York or New Jersey, their principal places of business. An original party to the contracts, Banner Pharmaceuticals, had its offices in North Carolina, but the complaint does not concern Banner's conduct. See supra p. 3 n.2.

In the end, the only connection between North Carolina and the claim for unfair or deceptive trade practices is Biopharma's use of an independent, third-party supplier in North Carolina. See Compl. ¶ 23. Given that PLD has not suffered any injury in North Carolina, that the parties' relevant conduct occurred outside of North Carolina, and that each party has its home office outside of North Carolina, one would be hard-pressed to conclude that the location of a third-party supplier would bestow upon North Carolina the most significant relationship to the occurrences that give rise to this claim.

The state with the most significant relationship to that claim is New York or New Jersey. The parties' principal places of business are in those states, and the relevant conduct related to the claim occurred there.

**D. Neither New York law nor New Jersey law recognize a claim for unfair or deceptive trade practices by a commercial reseller like PLD.**

Finally, the faithful application of North Carolina's choice-of-law rules requires judgment in Bionpharma's favor on PLD's claim for unfair or deceptive trade practices.

New York, like North Carolina, has a statutory prohibition on unfair and deceptive trade practices. See N.Y. Gen. Bus. Law § 349 (McKinney 2017). The statute, however, applies exclusively to conduct directed to consumers. E.g., Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 744 (N.Y. 1995); Sheth v. N.Y. Life Ins. Co., 273 A.D.2d 72, 73 (N.Y. App. Div. 2000); Cruz v. NYNEX Info. Res., 263 A.D.2d 285, 290 (N.Y. App. Div. 2000). PLD is not a consumer within the scope of the statute's protection because it did not "purchase[] goods and services for personal, family or household use." Sheth, 273 A.D.2d at 73. Nor does the complaint allege that Bionpharma directed any misstatement to any consumer. New York courts have rejected attempts, like PLD's, to use that state's consumer-protection statute merely to add another cause of action to a commercial disagreement. E.g., Teller v. Bill Hayes, Ltd., 213 A.2d 141, 148 (N.Y. App. Div. 1995) ("[The statute] was not intended to supplant an action to recover damages for breach of contract between parties to an arm's length contract."). The New York statute does not apply to PLD's claims.

New Jersey's consumer-fraud statute has been interpreted in the same fashion, with courts expressly concluding that commercial resellers cannot sue for violation of the statute. See, e.g., Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 992 F. Supp.

13

Case 1:17-cv-01154-NCT-JLW   Document 124   Filed 06/21/18   Page 13 of 17

709, 716 (D.N.J. 1998) (explaining the "well-settled law that one must be a 'consumer' in order to sue under this Act, and that commercial resellers such as plaintiffs do not qualify as 'consumers'"); Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 179 F.R.D. 450, 469 (D.N.J. 1998) (noting that "courts have consistently concluded that purchasers of wholesale goods for resale are not consumers within the meaning of the NJCFA").

These authorities foreclose PLD's claim for unfair and deceptive trade practices.[6]

## CONCLUSION

For the reasons set forth above, Bionpharma respectfully requests that the Court grant Bionpharma's motion for judgment on the pleadings and enter judgment in Bionpharma's favor on PLD's Sixth Cause of Action for unfair or deceptive trade practices.

This the 21st day of June, 2018.

/s/ Jon Berkelhammer
Jon Berkelhammer
N.C. State Bar No. 10246
Joseph D. Hammond
N.C. State Bar No. 45657
Post Office Box 2752
Greensboro, NC 27402
jon.berkelhammer@elliswinters.com
joe.hammond@elliswinters.com
Telephone: 336-217-4193
Facsimile: 336-217-4198

---

[6] In seeking judgment on the pleadings based on choice of law, Bionpharma in no way concedes or implies that PLD has stated a cognizable theory for violation of section 75-1.1. Bionpharma expressly reserves all defenses to the merits of that claim.

14

Luke L. Dauchot (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: 312-862-9292
Facsimile: 312-8622200

*Attorneys for Defendants Bionpharma Inc. and Bionpharma Healthcare LLC*

## CERTIFICATE OF COMPLIANCE WITH LR 7.3(d)

The undersigned attorney hereby certifies that this brief complies with LR 7.3(d) of the Local Rules of Civil Practice of the United States District Court for the Middle District of North Carolina with respect to its length. This brief was created using Microsoft Word. Based upon the word count of Microsoft Word, this Brief contains less than 6,250 words exclusive of the caption, signature block, Certificate of Service, and this Certification of Compliance.

/s/ Jon Berkelhammer
Jon Berkelhammer
N.C. State Bar No. 10246
ELLIS & WINTERS LLP
Post Office Box 2752
Greensboro, NC 27402
jon.berkelhammer@elliswinters.com
Telephone:  336-389-5683
Facsimile:  336-217-4198

*Attorney for Defendants Bionpharma Inc. and Bionpharma Healthcare LLC*

**CERTIFICATE OF SERVICE**

This is to certify that on June 21, 2018, the foregoing document was served on the following counsel of record via the Court's electronic filing system:

    Daniel R. Taylor, Jr.
    Susan H. Boyles
    Phillip A. Harris
    KILPATRICK TOWNSEND & STOCKTON LLP
    1001 West Fourth Street
    Winston-Salem, NC 27101-2400
    dantaylor@kilpatricktownsend.com
    sboyles@kilpatricktownsend.com
    pharris@kilpatricktownsend.com

    *Attorneys for Plaintiffs*

    /s/ Jon Berkelhammer
    Jon Berkelhammer
    *Attorney for Defendants*